UNITED STATES of America,
Appellee,

v.

Major Ellis HARRIS and Henry
Harris, Appellants.

Nos. 75–1368, 75–1369.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1975.

Decided Dec. 31, 1975.

J. Martin Hadican, Clayton, Mo., for appellants.

Jeffrey A. Bogue, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

Major Ellis Harris and Henry Harris appeal their convictions of interstate transportation of a stolen motor vehicle in violation of the Dyer Act, 18 U.S.C. § 2312. They were jointly tried before a jury in district court. We affirm the convictions of both defendants.

At approximately one p. m. on July 18, 1974, Trooper Hollis Compton of the Nebraska State Patrol was traveling westbound on Interstate 80 some four and one-half miles west of Ogallala, Nebraska. He observed a 1973 Lincoln Continental automobile traveling eastbound at a lawful rate of speed. He noticed that the vehicle bore current Missouri license plates and an in-transit sticker in the rear window. He crossed the median and, after following the vehicle for approximately a quarter of a mile, pulled the vehicle to the side of the road with his flashing red lights.

The driver of the car identified himself as Major Harris and was later identified as defendant Henry Harris. The driver was unable to produce an operator's license. Instead he gave Officer Compton a Missouri traffic citation. The driver also tendered a registration receipt which stated that the owner of the vehicle was Joy Harris and recited the price of the vehicle. Another uncompleted registration receipt was tendered to Compton as well as an inspection approval certificate.

The driver of the vehicle told Officer Compton that the vehicle belonged to Joy Harris, his sister-in-law. At this time Trooper Compton questioned the driver about the fact that the vehicle bore both current Missouri license plates and an in-transit sticker.

Defendant Major Ellis Harris was seated in the rear of the vehicle. He identified himself to Officer Compton as Ellis Harris and was also unable to produce any identification. Another passenger, O'Dell Shipp, was riding in the car and could not produce any identification.

During his investigation at the scene, Officer Compton observed various scrapes and scratches around the rivets that hold the vehicle identification plate to the dash. By radio he made a check with the National Crime Information Center [1] to determine whether or not the vehicle was stolen. The check proved fruitful—the vehicle identification number corresponded with the number of a vehicle reported stolen. Officer Compton thereupon arrested the defendants and Shipp and accompanied them to the Ogallala police station. The vehicle was also taken to the station.

At the station house, Officer Compton inventoried the automobile. James Burnett, an investigator employed by the Nebraska State Patrol, also inspected the vehicle. At no time was a warrant obtained before any search of the vehicle was conducted.

Burnett also noticed various scratches surrounding the vehicle identification number attached to the dash and consequently removed the dash to obtain the secondary vehicle identification number. The secondary number was different

---

1. The National Crime Information Center (N.C. I.C.) is a department within the Federal Bureau of Investigation which records on computer the vehicle identification numbers of sto- len vehicles for law enforcement purposes. Safety patrol officers are able to complete such a check by radio in a matter of minutes.

than that attached to the dash but also corresponded with the number of a vehicle reported missing by one Milton Zorensky of St. Louis, Missouri. Burnett then identified the vehicle identification numbers affixed to the engine and transmission. These numbers matched the number on the dash. Burnett's investigation revealed that the stolen vehicle bearing the number on the dash had been found by the St. Louis Police Department minus the engine and transmission. That vehicle had been leased to one George Stencel by the Ford Motor Company of St. Louis, Missouri. In October, 1973, Stencel reported that the vehicle had been stolen.

The defendants were subsequently interviewed by Special Agent Thomas Miller of the Federal Bureau of Investigation. Both defendants denied knowledge that the car was stolen and reiterated that the vehicle belonged to Joy Harris.

At trial, defendants made a timely motion to suppress all evidence gathered as a result of the warrantless search. The motion was denied. On this appeal, defendants urge error in the following respects: 1) there were no reasonable grounds for the initial stop of the automobile; 2) the warrantless search of the automobile was unreasonable and violated defendants' fourth amendment rights; and 3) the evidence adduced at trial was insufficient to support the guilty verdict as to each defendant.

## I. The Initial Stop.

Defendants argue that no reasonable grounds existed for the initial stop of the vehicle. We cannot agree.

There can be no question that the defendants were protected by the fourth amendment as they drove down the highway. We have held that a person is "seized" for purposes of the fourth amendment when he is signaled to the side of the road by police officers. *Carpenter v. Sigler,* 419 F.2d 169, 171 (8th Cir. 1969).

It is well settled that in justifying such an intrusion, a police officer " * * must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). *See also, United States v. Nicholas,* 448 F.2d 622, 624 (8th Cir. 1971). *Terry* also teaches us that the police officer's assessment of the facts must be judged against an objective standard. And our inquiry into the question of "reasonableness" is two pronged. A reviewing court must objectively determine the following:

> (1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related "to the circumstances which justified the interference in the first place." (Footnote omitted.)

*Carpenter v. Sigler, supra,* 419 F.2d at 171. *See also, United States v. Wickizer,* 465 F.2d 1154, 1156 (8th Cir. 1972), and cases cited therein.

Applying these principles to the instant case, we find that sufficient grounds existed for the initial stop as well as the subsequent detention of the defendants. Officer Compton testified at the suppression hearing that he observed defendants' vehicle bearing both current Missouri license plates and an in-transit sticker on the rear window. Missouri and Nebraska law both prohibit the use of any unauthorized license plate. Neb.Rev.Stat. § 60–323; Mo.Ann. Stat. § 301.320. Furthermore, Neb.Rev. Stat. § 39–6,136(a) provides:

> It shall be unlawful for any person to drive any vehicle upon a highway with *any* sign, poster or other nontransparent material upon the front windshield, side wings, side or rear windows of such motor vehicle other than a certificate or other paper *required* to be so displayed by law. (Emphasis supplied.)

There can be no doubt that the in-transit sticker was not required to be displayed by law since the vehicle also bore current license plates. Thus assuming the

truth of Officer Compton's testimony,[2] reasonable grounds existed to initially stop the vehicle and require the driver to produce his operator's license.[3] When the driver failed to produce sufficient identification, further detention of the vehicle and its occupants was justified. When Officer Compton noticed in plain view various scratches and marks surrounding the vehicle identification number attached to the dash, he was justified in running a check with the National Crime Information Center to determine whether the vehicle was stolen. After receiving information that the vehicle was stolen, the officer was justified in placing the defendants under arrest. In short, each step taken by Compton was, in our view, reasonable under the circumstances.

## II. The Warrantless Search of the Car.

■ Appellants next contend that the warrantless search of the automobile at the Ogallala police station was unreasonable and thus violated their fourth amendment rights. We disagree.

In *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Supreme Court held that police officers could constitutionally search an automobile at the station house where probable cause existed to search the car at the scene of the initial stop. "The rationale of *Chambers* is that *given a justified initial intrusion*, there is little difference between a search on the open highway and a later search at the station." (Emphasis in original.) *Coolidge v. New Hampshire*, 403 U.S. 443, 463 n. 20, 91 S.Ct. 2022, 2036, 29 L.Ed.2d 564 (1971). The Supreme Court has recently reaffirmed *Chambers* under facts virtually indistinguishable from the present case. *See Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

Here, as in *Chambers* and *White*, probable cause developed at the scene to conduct the warrantless search. After running the N.C.I.C. check, Officer Compton had reasonable cause to suspect that the automobile was stolen. The automobile was a fleeting target for a search. The probable cause factor which developed at the scene still obtained at the station house when Compton and Burnett inspected the vehicle.

## III. Sufficiency of the Evidence.

■ Appellants lastly contend that insufficient evidence was presented at trial to support their convictions under the Dyer Act. Under § 2312, the government must prove the following elements beyond a reasonable doubt: 1) the vehicle was stolen; 2) the defendants had knowledge that it was stolen; and 3) the defendants transported the vehicle in interstate commerce. *United States v. Johnson*, 526 F.2d 600 (8th Cir. 1975); *United States v. King*, 425 F.2d 1163, 1164 (5th Cir. 1970).

As to the first element of the offense, we have recently held that "[i]t is sufficient to show under the statute 'that only some of the major parts of the vehicle in question were stolen.'" (Citation omitted.) *United States v. Neville*, 516 F.2d 1302, 1305 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). The government met its burden in this regard. The evidence shows that the major parts of the vehicle were reported stolen in the St. Louis, Missouri area. The engine and transmission belonged to the Ford Motor Company and were part of an automobile leased to George Stencel. Stencel reported that the car was missing in October, 1973. The frame of the defendants' automobile belonged to the employer of Milton Zo-

---

**2.** Defendants urge that we not credit the testimony of Officer Compton which was given at the suppression hearing because it had been subjected to criticism in earlier United States District Court cases. Although our view of his testimony is not without some reservations, the weight to be accorded such testimony is ultimately a matter resting within the discretion of the trial judge. We cannot say that the

trial judge was clearly erroneous in crediting the testimony of Officer Compton.

**3.** We have previously permitted such investigative stops where a motor vehicle was traveling under suspicious circumstances as in this case. *See United States v. Geelan*, 509 F.2d 737, 743–744 (8th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975).

rensky and was reported stolen in July, 1974.

The requisite showing of knowledge was also made.

We have held repeatedly that possession in one state of property recently stolen in another state, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find that the person in possession not only knew it to be stolen property, but also transported or caused it to be transported in interstate commerce.

*Kramer v. United States,* 408 F.2d 837, 839 (8th Cir. 1969). *See also, United States v. Brotherton,* 427 F.2d 1286, 1288–1289 n. 1 (8th Cir. 1970). Since the defendants were found in possession of a stolen vehicle, the question of knowledge was properly submitted to the jury. We are powerless to overturn the jury's finding that both defendants knew that the vehicle was stolen.

Defendants concede that they drove the vehicle in interstate commerce. Thus sufficient evidence was adduced at trial to support the convictions.

The judgments of conviction are affirmed as to each of the defendants.